**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DAVID D BATTLE JR.

Petitioner,

V.

AMERICAN EXPRESS COMPANY; TRANSWORLD SYSTEMS INC.; FIRSTSOURCE ADVANTAGE, LLC; RADIUS GLOBAL SOLUTIONS, LLC; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION LLC

Respondents

OCT 9 2026 PM12:29
FILED - USDC - FLMD - TPA

CASE NO. 8:26-cv-3077-WFJ-NHA

**BILL IN EQUITY AND FORMAL COMPLAINT**
**Petitioner Requests Trial by the Court Sitting in Equity; Rights to Trial by Jury on Legal Claims Expressly Reserved**

## I. NATURE OF ACTION

1. Petitioner, DAVID D. BATTLE JR, brings this action against Respondents for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 et seq.; Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. Petitioner further invokes the equitable jurisdiction



IFP

of this Court and seeks injunctive and declaratory relief, as well as relief under defamation doctrine and the common law of unjust enrichment.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1692k(d) (FDCPA), 15 U.S.C. § 1681p (FCRA), pursuant to 18 U.S.C. § 1964(c) (RICO).

3. Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as all events giving rise to the claims occurred within this district, all Respondents conducted collection activity directed at Petitioner within this district, and Petitioner is domiciled in this district.

## III. PARTIES

5. Petitioner, DAVID D. BATTLE, JR., is a private man domiciled in Brooksville, Florida [34601]. At all relevant times, Petitioner acted in a private, non-commercial capacity.

6. Respondent **AMERICAN EXPRESS COMPANY** ('**Amex**') at 200 Vesey Street, New York, NY 10285, registered agent C T Corporation System, 1200 South Pine Island Road, Plantation, FL 33324, is a financial institution operating in interstate commerce and the original creditor on the account at issue. **Amex** is a 'furnisher of information' as defined by 15 U.S.C. § 1681s-2.

7. Respondent **TRANSWORLD SYSTEMS INC.** ('**TSI**') at 3838 N. Causeway Blvd, Suite 2800, Metairie, LA 70002, registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301, is a debt collection company engaged in the collection of consumer debts on behalf of others and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6).

8. Respondent **FIRSTSOURCE ADVANTAGE, LLC** ('**FirstSource**') at 205 Bryant Woods South, Amherst, NY 14228, registered agent C T Corporation System, 1200 South Pine Island Road, Plantation, FL 33324, is a debt collection company engaged in the collection of consumer debts on behalf of others and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6).

9. Respondent **RADIUS GLOBAL SOLUTIONS, LLC** ('**Radius**') at 3838 N. Causeway Blvd., c/o Sessions, Israel & Shartle, Suite 2800, Metairie, LA 70002, registered agent C T Corporation System, 1200 South Pine Island Road, Plantation, FL 33324, is a debt collection company engaged in the collection of consumer debts on behalf of others and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6).

10. Respondent **EQUIFAX INFORMATION SERVICES, LLC** ('**Equifax**') is headquartered in Georgia and does business in Florida through its registered agent. **Equifax** is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

11. Respondent **EXPERIAN INFORMATION SOLUTIONS, INC.** ('**Experian**') is headquartered in California and does business in Florida through its registered agent. **Experian** is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

12. Respondent **TRANS UNION LLC** ('**TransUnion**') is headquartered in Illinois and does business in Florida through its registered agent. **TransUnion** is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

13. Each Respondent acted as an agent, alter ego, affiliate, co-conspirator, or joint venturer of the others, and each is jointly and severally liable for the acts, omissions, and damages alleged herein.

## IV. STATEMENT OF FACTS

### A. FDCPA Violations by Collection Respondents

14. Respondent **Amex** securitized the original debt. Respondents **TSI**, **FirstSource**, and **Radius** each communicated with Petitioner in connection with collection of an alleged **American Express** credit card debt. None of these entities produced an assignment agreement, bill of sale, or chain of evidence establishing which entity owned the alleged obligation or had authority to collect it at the time of each communication. These Respondents also didn't provide proof of who owns the servicing rights, the notice of the sale, pooling and servicing agreements, or the Forward Flow Purchase and Sale Agreement.

15. **TSI** sent Petitioner the following written communications in connection with the alleged **Amex** debt: a letter dated June 25, 2024 claiming Petitioner owed $327.76,

crediting $6.97, and demanding $320.79; a letter dated July 17, 2024 demanding $340.79; a letter dated September 5, 2024 acknowledging Petitioner's debt validation request and admitting only billing statements were provided; and a letter dated December 9, 2024 demanding $270.57.

16. **TSI**'s most recent letters dated June 5, 2025 and June 23, 2025 reference a different account number than all prior correspondence, demanding $500.94 and $552.42 respectively.

17. **TSI** attempted to collect on two different account numbers simultaneously purportedly belonging to the same consumer for the same creditor.

18. **FirstSource** sent Petitioner a letter dated September 17, 2024 claiming Petitioner owed $320.79, crediting $50, and demanding $270.79, in connection with the same alleged **Amex** debt being simultaneously pursued by **TSI**.

19. **Radius** sent Petitioner a letter dated January 29, 2025 demanding $305.80, a letter dated February 24, 2025 acknowledging Petitioner's debt validation request and admitting only billing statements were provided, and a letter dated March 26, 2025 again acknowledging Petitioner's validation request and again providing only billing statements.

20. An unauthorized inquiry from **Radius** appeared on Petitioner's **TransUnion** report on August 24, 2023, and an unauthorized inquiry from **TSI** appeared on Petitioner's **Experian** report on June 25, 2024, despite active security freezes on

all three credit reports. These inquiries were made without Petitioner's knowledge or consent and without a permissible purpose.

21. **American Express** sent Petitioner a letter dated January 20, 2024 canceling the credit card.

22. **American Express** denied the billing error claim by letter dated February 21, 2024. Another dispute was submitted by mail on or around March 6, 2024 followed by several other mailed disputes in which **American Express** didn't respond back until August 28, 2024 acknowledging receipt of the billing error dispute.

23. Petitioner submitted identity theft reports and disputes to the CRAs

24. **American Express** acknowledged a CRA dispute on September 18, 2024 reflecting an account balance of $270 with a status of Satisfactory and Closed, and a High Credit field left blank.

25. **American Express** acknowledged an identity theft complaint by letter dated February 13, 2025.

26. **American Express** acknowledged a CRA dispute by letter dated February 25, 2025.

27. By letter dated April 15, 2025, **American Express** acknowledged Petitioner's identity theft complaint and refused to provide the original contract, chain of title, original application, or accounting, offering only billing statements and an unsigned copy of the application.

28. **American Express** continued to furnish negative information to consumer reporting agencies.

29. Petitioner previously filed complaints with the Consumer Financial Protection Bureau regarding the collection conduct and credit reporting violations at issue herein. Respondents received notice of those complaints through the CFPB's complaint portal and denied the allegations.

**B. FCRA Violations — Inaccurate Credit Reporting**

30. **American Express** furnished negative information regarding the alleged debt to Respondents **TransUnion**, **Equifax**, and **Experian**. The reported information contains the following material inaccuracies across multiple report dates:

**Equifax Reporting**:

a. The credit limit on the **Equifax** report was $800 with the high credit amount being $9,433, which is a large difference from the credit limit.

b. Petitioner disputed the inaccurate **Amex** information with **Equifax**.

c. **Equifax** finally stopped reporting the disputed account on the May 15, 2024 report after multiple dispute requests.

**Experian Reporting**

d. **Experian** reported the credit limit on the account as $500 on the April 08, 2024 report.

e. **Experian** reported the high balance as $9,433, which exceeds the $500 credit limit by $8,933.

f. A second reference within the same report states the high balance was $800.

g. The payment grid across multiple **Experian** report dates contains months with $0 balances reported from March 2022 through April 2023 despite the account reflecting late payment notations for January 2022 (30 days late) and February 2022 (60 days late) that do not appear anywhere in the payment grid.

h. **Experian** reported closure in February 2024 on the March 25, 2024 report, March 2024 on the March 28, 2024 report, March 2024 on the April 10, 2024 report, April 2024 on the April 30, 2024 report, and May 2024 on the May 2024 and February 2025 report.

i. The balance on the account continued to increase after the account was closed and cancelled. The balance was $201 according to the April 08, 2024 **Experian** report, but the balance for April 2024 was reported as $235 on the March 25, 2025 **Experian** report

j. On the April 08, 2024 **Experian** report the balance was $201 for both March and February 2024, while January 2024 was completely left off the report.

k. On the February 24, 2025 **Experian** report balance had increased to $352.

l. The payment grid on the February 24, 2025 **Experian** report shows no info for August 2023, November 2023, and January 2024. It provides no payment information in the payment grid, while simultaneously reporting the same month with different balances, i.e. Oct 2023 with a balance of $166

then again with a balance of $282, creating an irreconcilable internal inconsistency.

m. On the June 23, 2025 **Experian** report, the account was supposed to be closed as of January 2024, but instead they were reporting "No Data" for January 2025 and reported the account late from February 2025 to May 2025 with a balance of $500.

n. The **Amex** account is still being reported on the **Experian** report.

**Transunion Reporting**:

o. **Transunion** reported the credit limit on the account as $500 on the February 17, 2024 report.

p. **Transunion** reported the high balance as $9,433, which exceeds the $500 credit limit by $8,933.

q. The payment grid across multiple **Transunion** report dates contain no balances from April 2017 through January 2024 despite the account reflecting late payment notations for January 2022 (30 days late) and February 2022 (60 days late) that do not appear anywhere in the payment grid.

r. The pay status on the February 17, 2024 report says "Current; Paid or Paying as Agreed" while also saying the account is closed.

s. The February 17, 2024 report also says has “X’s” in the payment grid for November 2023 through January 2024, not reflecting the Current status in which it would normally say “Ok”.

t. **TransUnion** reported closure on January 20, 2024 on the on the February 17, 2024 report

u. The **TransUnion** report dated December 12, 2024 shows the account status alternating between 'closed,' 'no data,' and 'closed and disputed' across consecutive months, with the account reported as 30 days late in December 2023, 60 days late in January 2024, and “OK” in February and March 2024, despite the account having been closed and cancelled on January 20, 2024.

v. The December 12, 2024 **Transunion** report has a blank payment grid for December 2023 to March 2024, with no balance or account status being reported. In December 2023, it was 30 days late and 60 days late for January 2024. February 204 and March 2024 were reported as “OK”.

w. The December 12, 2024 **Transunion** report then shows a balance of $235 for April 2024. It leaves 2 months blank then reports the balance as $320 for July 2024. For April 2024, it says “OK” assuming that means the account is in good standing. In May 2024 it was reported 30 days late.

x. This inconsistent data and balance increases on the December 12, 2024 report continues through November 2024 while the account was reportedly closed.

31. There were eighty-three disputed inquiries from **American Express** and **American Express 2** that were pending on the March 25, 2025 **Experian** report with a completion date of April 18, 2025. On the same report, 82 of those inquiries were deleted.

32. Petitioner maintained active security freezes on all three credit reports and affirmatively opted out of all prescreened offers and third-party access. Notwithstanding those freezes, the following unauthorized inquiries appeared without Petitioner's knowledge or consent:

   a. An inquiry from **Radius** Global Solutions on the **TransUnion** report dated August 24, 2023;

   b. An inquiry from **TSI** on the **Experian** report dated June 25, 2024;

   c. An inquiry from **American Express** on the **Equifax** report dated December 30, 2022;

   d. An inquiry from **American Express** on the **Experian** report dated August 8, 2023;

   e. An inquiry from **American Express 2** on the **Experian** report dated February 18, 2024.

   f. 83 additional inquiries from **American Express** and **American Express 2** on 0**Experian** report.

33. Petitioner has received a continuing volume of unsolicited credit solicitation letters from third parties as a direct consequence of the CRAs sharing or selling Petitioner's information despite active freezes and opt-out elections.

34. As a direct and proximate result of the inaccurate negative information furnished and maintained by Respondents on Petitioner's **TransUnion** consumer credit report, Petitioner suffered documented credit denials from BMW Financial Services from applications submitted on March 2, 2026 and March 4, 2026, which could not be processed due to an active **TransUnion** security freeze and applications submitted on March 29, 2026, after Petitioner temporarily lifted the freeze for 24 hours to permit processing, were denied citing excessive credit utilization, excessive debt activity, and failure to meet minimum credit requirements.

35. Petitioner was denied by US Bank on February 22, 2025, on a personal application and a business card application, with the denial citing information provided by **TransUnion** including serious delinquency and public records or collection filed, recency of delinquency, and length of time revolving accounts have been established. The length of time factor cited by US Bank is contradicted by the fact that Petitioner's revolving accounts were opened in 2020 or before, a period of five or more years.

36. Petitioner applied for credit card with Navy Federal Credit Union. Petitioner Petitioner received a pre-qualification letter in the mail from Navy Federal for a credit card. was denied on September 9, 2026. The denial notice referenced

information obtained from **Equifax** as the basis for the adverse action with the reasons being Serious Delinquency, Lack Of Recent Revolving Account Information, Number Of Accounts With Delinquency, and Time Since Delinquency Is Too Recent Or Unknown.

37. Petitioner received a pre-qualification letter in the mail from Alive Credit Union for a credit card. Petitioner applied for the credit card, but was denied on September 9, 2026 based on data received from Transunion with the reasons being Serious Delinquency, Lack Of Recent Revolving Account Information, Number Of Accounts With Delinquency, Time Since Delinquency Is Too Recent Or Unknown, and Number of Recent Inquiries.

38. Petitioner discovered that the CRA the lender sent their inquiry request to is irrelevant because the Petitioner's private data is being shared between all three CRAs simultaneously.

**C. American Express's Creation of an Unauthorized Account**

39. On or around February 17, 2024, **American Express** created a new credit account in Petitioner's name without Petitioner's knowledge, authorization, or consent. Petitioner had no awareness of the existence of this account until reviewing communications in connection with this litigation on July 29, 2026. **American Express** used the Petitioner's identity for commercial purposes without authorization. The new account carried an opening balance of $201, seemingly representing a transfer of the balance from Petitioner's original **American Express**

account. **American Express** effectuated this account creation and balance transfer without Petitioner's authorization.

40. Petitioner's email communications from **American Express** reflect a change in account number on or around February 17, 2024, consistent with the creation of the new unauthorized account. Petitioner did not request, authorize, or consent to the creation of a second account, the assignment of a new account number, or the transfer of any balance to a new account.

41. **American Express** subsequently referred the new unauthorized account to **Transworld Systems Inc**. for collection. **TSI**'s letters dated June 5, 2025 and June 23, 2025 reference the new account number and demand $500.94 and $552.42 respectively, amounts that bear no relationship to the $201 balance that existed at the time the unauthorized account was created, suggesting additional unauthorized charges, fees, or interest were applied to an account Petitioner never opened. **American Express** sent emails to the Petitioner requesting $592.42 to pay off the account.

42. **American Express** acknowledged Petitioner's identity theft complaints by letters dated February 13, 2025 and April 15, 2025. Notwithstanding this acknowledgment, **American Express** continued to report the unauthorized account to consumer reporting agencies and continued to refer the alleged obligation to collection entities.

43. The inquiry from an entity identified as "**American Express 2**" on the **Equifax** report dated February 18, 2024, one day after the creation of the new unauthorized account on February 17, 2024, is consistent with **American Express** accessing Petitioner's credit file in connection with the creation of the unauthorized account, using Petitioner's frozen consumer report without authorization in the process.

## V. CAUSES OF ACTION

### COUNT I — VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692 et seq. (Against Respondents Transworld Systems Inc.; FirstSource Advantage, LLC; Radius Global Solutions, LLC)

44. Petitioner re-alleges paragraphs 14 through 29 as if fully set forth herein.

45. Respondents are each 'debt collectors' within the meaning of 15 U.S.C. § 1692a(6).

46. Respondents **TSI**, **Radius**, and **FirstSource** violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Petitioner, including repeated written contact across multiple entities pursuing the same unvalidated debt simultaneously.

47. Respondent **TSI** violated 15 U.S.C. § 1692e by referencing two different account numbers across its collection letters, constituting false representations regarding the character and legal status of the alleged debt.

48. Respondents **TSI**, **Radius**, and **FirstSource** violated 15 U.S.C. § 1692e by making representations concerning the alleged debt without verified standing or chain of

title, constituting false and misleading representations regarding the character and legal status of the alleged debt.

49. Respondents **TSI**, **Radius**, and **FirstSource** violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect an alleged debt on which no verified chain of title exists and for which no entity among the multiple collectors has established ownership.

50. Respondents **TSI** and **Radius** violated 15 U.S.C. § 1692g by failing to provide adequate validation of the alleged debt upon Petitioner's timely request, producing only billing statements in lieu of the original contract, chain of title, and verified accounting.

51. Respondent **TSI**'s letters dated June 5, 2025 and June 23, 2025, which reference an account number corresponding to an account created by **American Express** without Petitioner's knowledge or authorization, constitute collection communications in connection with an obligation that does not exist. Petitioner never opened, authorized, or signed any agreement for the account referenced in those letters. Collection of a debt arising from an account the consumer never authorized constitutes a false representation regarding the character and legal status of the alleged debt in violation of 15 U.S.C. § 1692e, an attempt to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1), and an unfair and unconscionable collection practice in violation of 15 U.S.C. § 1692f.

52. WHEREFORE, Petitioner seeks actual damages, statutory damages of $1,000.00 per violation per Respondent, declaratory and injunctive relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

**COUNT II — VIOLATIONS OF THE FCRA BY FURNISHER, 15 U.S.C. § 1681s-2 (Against Respondent American Express Company)**

53. Petitioner re-alleges paragraphs 23 through 43 as if fully set forth herein.

54. **American Express** is a 'furnisher of information' within the meaning of 15 U.S.C. § 1681s-2 and owes duties to Petitioner to furnish accurate information and to conduct reasonable investigations of disputed information.

55. The **Amex** tradeline reported across Petitioner's **TransUnion**, **Equifax**, and **Experian** credit reports contains the material inaccuracies identified above, including a high balance of $9,433 on a $800 credit limit account then $9,433 on a $500 credit limit account, inconsistent account closure dates across five separate dates, balance increases on a closed cancelled account, payment grid contradictions, late payment notations absent from the payment grid, and alternating account status codes on a closed account, each independently constituting a violation of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681s-2.

56. **American Express** failed to fulfill its duty to furnish complete and accurate information under 15 U.S.C. § 1681s-2(a). Following Petitioner's disputes and identity theft reports, **American Express** failed to conduct a reasonable reinvestigation and refused to produce the original contract, chain of title, or

authenticated accounting, in violation of 15 U.S.C. § 1681s-2(b) and the standard established in Johnson v. MBNA America Bank, N.A., 357 F.3d 426 (4th Cir. 2004).

57. **American Express** furnished information to consumer reporting agencies regarding an account created without Petitioner's authorization on or around February 17, 2024. The reporting of an unauthorized account is inaccurate by definition under 15 U.S.C. § 1681e(b). Petitioner never opened the account, never authorized its creation, and never incurred any obligation under it. **American Express** continued to furnish this information after receiving Petitioner's identity theft reports in February and April 2025, in violation of 15 U.S.C. § 1681s-2(a)(1)(B) and 15 U.S.C. § 1681c-2, which require furnishers to block reporting of information arising from identity theft upon notice.

58. **American Express**'s creation of an unauthorized account, its continued reporting of that account after receiving identity theft notice, and its referral of the unauthorized account to collection agencies demonstrates that **American Express** used Petitioner's personal identifying information for its own financial benefit while causing direct harm to Petitioner's creditworthiness and financial standing.

59. Petitioner received the following credit denials as a direct result of the inaccurate negative information furnished and maintained by Respondents: four denial letters from BMW Financial Services and three to four denial letters from US Bank. Each denial letter cited negative credit information that corresponds to the

inaccurate reporting identified in this complaint. True and correct copies of these denial letters are attached as exhibits.

60. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent **American Express** Company and award Petitioner actual damages, statutory damages pursuant to 15 U.S.C. § 1681n, punitive damages for willful noncompliance, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT III — VIOLATIONS OF THE FCRA BY CONSUMER REPORTING AGENCIES, 15 U.S.C. § 1681i (Against Respondents TransUnion, LLC; Equifax Information Services, LLC; Experian Information Solutions, Inc.)**

61. Petitioner re-alleges paragraphs 30 through 43 as if fully set forth herein.

62. Each CRA Respondent is a 'consumer reporting agency' within the meaning of 15 U.S.C. § 1681a(f).

63. Following receipt of Petitioner's disputes and disputes submitted by authorized third parties acting on Petitioner's behalf, each CRA was required to conduct a reasonable reinvestigation of the disputed information within thirty days pursuant to 15 U.S.C. § 1681i(a).

64. Each CRA failed to conduct a reasonable reinvestigation. Rather than independently verifying the disputed information, each CRA parroted the furnisher's records without review of supporting documentation, in direct

contravention of Johnson v. MBNA America Bank, N.A., 357 F.3d 426 (4th Cir. 2004).

65. Each CRA continued to report materially inaccurate information including a high balance exceeding the credit limit by $8,933 with **Experian** and **Transunion**, **Equifax** having a high balance exceeding the credit limit by $8,633, inconsistent account closure dates across all 3 CRAs, balance increases on a closed account, late payment notations absent from the payment grid, and alternating closed and unknown status codes, in violation of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i.

66. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents **TransUnion**, **Equifax**, and **Experian**, and award Petitioner actual damages, statutory damages pursuant to 15 U.S.C. § 1681n, punitive damages for willful noncompliance, an order compelling deletion of all inaccurate and unverified information, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT IV — WILLFUL VIOLATIONS OF 15 U.S.C. § 1681b — UNAUTHORIZED ACCESS TO CONSUMER REPORTS (Against American Express Company; American Express 2 [unknown entity]; TransUnion, LLC; Equifax Information Services, LLC; Experian Information Solutions, Inc.)**

67. Petitioner re-alleges paragraphs 30 through 43 as if fully set forth herein.

68. This Count is pleaded as a standalone cause of action for unauthorized access to consumer reports, separate from and in addition to the FCRA reinvestigation claims pleaded in the preceding counts.

69. Petitioner maintained active security freezes on all three consumer credit reports and affirmatively opted out of all prescreened credit offers and third-party data sharing at all times relevant to this complaint. These elections constitute affirmative legal directives to each CRA to refuse access to Petitioner's consumer reports absent specific written authorization.

70. The March 25, 2025 **Experian** report reflects 83 pending disputed inquiries from **American Express** and an entity identified as "**American Express 2**." On the same report, 82 of those 83 inquiries were deleted by **Experian**, an extraordinary admission by the CRA that 82 separate accesses to Petitioner's frozen consumer report were unauthorized, impermissible, or otherwise invalid.

71. Each of the 82 deleted inquiries constitutes a confirmed unauthorized access to Petitioner's consumer report in violation of 15 U.S.C. § 1681b. At statutory damages of $100 to $1,000 per willful violation under 15 U.S.C. § 1681n, the 82 confirmed unauthorized accesses represent a statutory damages exposure of $8,200 to $82,000 on this element alone, before actual damages, punitive damages, or attorney's fees.

72. The entity identified as "**American Express 2**" in the credit report inquiries is not a commonly known legal entity. Petitioner has not consented to any entity

identified as "**American Express 2**" accessing Petitioner's consumer reports. **American Express** is hereby required to identify "**American Express 2**," its legal relationship to **American Express** Company, and its authorization to access Petitioner's consumer reports. The failure to do so supports the inference that "**American Express 2**" accessed Petitioner's consumer reports without any permissible purpose or lawful permission from the Petitioner.

73. The unauthorized inquiries identified in paragraph 32 of the Statement of Facts constitute additional independent violations of 15 U.S.C. § 1681b for which each accessing entity and each permitting CRA is independently liable under 15 U.S.C. § 1681n.

74. Each CRA that permitted an inquiry through Petitioner's frozen consumer report is independently liable for willful noncompliance under 15 U.S.C. § 1681n for failing to honor the statutory security freeze. Each entity that obtained a consumer report through a frozen account without a permissible purpose is independently liable under 15 U.S.C. § 1681n.

75. The notations of "permissible use — written consent" appearing on the reports are false and constitute a further misrepresentation. Petitioner provided no written consent, maintained active freezes, and affirmatively opted out. Reporting a false permissible purpose is itself evidence of willful noncompliance.

76. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner statutory damages of not less than $100

and not more than $1,000 per willful violation for each of the 83 confirmed or identified unauthorized accesses pursuant to 15 U.S.C. § 1681n, actual damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3), and order **American Express** to identify and account for the entity described as "**American Express 2**" in the credit report inquiries.

**COUNT V — RICO VIOLATIONS, 18 U.S.C. §§ 1962 & 1964 (Against Respondents American Express Company; Transworld Systems Inc.; FirstSource Advantage, LLC; Radius Global Solutions, LLC)**

77. Petitioner re-alleges paragraphs 14 through 29 and 39 through 43 as if fully set forth herein.

78. Respondents **American Express Company, Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** constitute an 'enterprise' within the meaning of 18 U.S.C. § 1961(4), operating as an association-in-fact engaged in a pattern of racketeering activity directed at Petitioner and, upon information and belief, other similarly situated consumers.

79. The enterprise's pattern of racketeering activity includes the following predicate acts under 18 U.S.C. § 1341 (mail fraud):

   a. The mailing of collection letters by **TSI**, **FirstSource**, and **Radius** asserting the right to collect an alleged debt without verified chain of title, constituting false representations transmitted through the United States Mail;

b. The mailing of collection letters by **TSI** referencing a second account number not associated with any account in Petitioner's name, constituting false representations transmitted through the United States Mail;

c. The mailing of letters by **American Express** refusing to produce the original contract, original signed application, accounting, or chain of title while continuing to assert the existence of a valid debt obligation and continuing to furnish negative information to consumer reporting agencies.

80. The creation of an unauthorized account in Petitioner's name on or around February 17, 2024, the transfer of a balance to that account without authorization, and the referral of that account to **Transworld Systems Inc**. for collection constitutes a predicate act of wire fraud under 18 U.S.C. § 1343, using electronic communications and wire transfers to create and exploit an unauthorized financial account for commercial gain. The mailing of collection letters by **TSI** in connection with the unauthorized account constitutes a predicate act of mail fraud under 18 U.S.C. § 1341. These predicate acts are in addition to those previously identified and strengthen the RICO enterprise and pattern allegations.

81. The pattern of racketeering activity has continued from at least June 2024 through June 2025 across multiple collection entities pursuing the same alleged obligation, satisfying the continuity requirement under H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

82. As a direct and proximate result of the RICO violations, Petitioner has suffered injury to business and property entitling Petitioner to treble damages, attorney's fees, and costs pursuant to 18 U.S.C. § 1964(c).

83. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents **American Express Company**, **Transworld Systems Inc.**, **FirstSource Advantage,** LLC, and **Radius Global Solutions,** LLC, and award Petitioner treble damages pursuant to 18 U.S.C. § 1964(c), injunctive relief dissolving the collection enterprise as it pertains to Petitioner's alleged debt, and reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).

**COUNT VI — DEFAMATION PER SE (Against Respondents American Express Company; TransUnion, LLC; Equifax Information Services, LLC; Experian Information Solutions, Inc.)**

84. Petitioner re-alleges paragraphs 23 through 40 as if fully set forth herein.

85. **American Express Company, TransUnion, Equifax,** and **Experian** published materially false and unverified negative credit information to third-party creditors, and counterparties knowing Petitioner had disputed its accuracy, without conducting verification, and in the absence of any authenticated documentation supporting the reported information. Such publications directly impute financial irresponsibility and dishonesty to Petitioner and constitute defamation per se under Florida common law, impairing Petitioner's ability to conduct business and participate in the economy.

86. As a direct result, Petitioner suffered damage to creditworthiness, denial of access to financing, reputational harm, loss of business, loss of remuneration, and loss of economic opportunity, for which Petitioner seeks actual and punitive damages.

87. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents **American Express** Company, **TransUnion**, LLC, **Equifax** Information Services, LLC, and **Experian** Information Solutions, Inc., and award Petitioner actual damages, punitive damages for willful publication of false information, and an order compelling immediate correction and deletion of all defamatory reporting, and such further relief as the Court deems just and proper.

**COUNT VII — UNJUST ENRICHMENT AND EQUITABLE RESCISSION**

**(Against Respondent American Express Company)**

88. Petitioner re-alleges paragraphs 14 through 29 and 36 through 43 as if fully set forth herein.

89. To the extent any obligation exists or existed between Petitioner and **American Express**, that obligation has not been authenticated, verified, or supported by a chain of title establishing **American Express**'s present ownership and right to collect. **American Express** refused to produce the original signed contract, original signed application, chain of title, authenticated accounting, or any proof of consideration given on their part upon Petitioner's request.

90. The continued collection activity and negative credit reporting on an unverified, unauthenticated alleged obligation constitutes unjust enrichment at Petitioner's expense.

91. **Amex** created an unauthorized account in the Petitioner's name in order to collect on two separate accounts.

92. In equity, Petitioner seeks rescission of any collection obligation arising from unverified claims, disgorgement of any amounts collected on the alleged debt, any amounts received from creation of the new account, and restoration to the position Petitioner would have occupied absent Respondents' unlawful conduct.

93. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent **American Express** Company, order rescission of any collection obligation arising from unverified claims, order disgorgement of any amounts collected on the alleged debt, and restore Petitioner to the position he would have occupied absent Respondents' unlawful conduct.

**COUNT VIII — VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, Fla. Stat. § 559.55 et seq. (Against Respondents Transworld Systems Inc.; FirstSource Advantage, LLC; Radius Global Solutions, LLC)**

94. Petitioner re-alleges paragraphs 14 through 29 as if fully set forth herein.

95. Respondents are "debt collectors" as defined by Fla. Stat. § 559.55(7) and are subject to the Florida Consumer Collection Practices Act at all times relevant to this complaint.

96. Respondents **Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** violated Fla. Stat. § 559.72(7) by willfully communicating with Petitioner with such frequency as to harass Petitioner, including multiple written contacts across coordinated entities pursuing the same unvalidated alleged debt simultaneously without chain of title or proof of ownership.

97. Respondents **Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** violated Fla. Stat. § 559.72(9) by asserting the existence of a legal right to collect an alleged debt when such right does not exist in law or in fact, specifically by pursuing collection without verified chain of title, board-authorized agency, or authenticated proof of ownership of the alleged obligation.

98. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner actual damages, statutory damages pursuant to Fla. Stat. § 559.77(2), punitive damages for willful violations, injunctive relief prohibiting further collection activity on the unvalidated alleged debt, and reasonable attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

**COUNT IX — VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. § 501.201 et seq. (Against Respondents**

**<u>American Express; Transworld Systems Inc.; FirstSource Advantage, LLC; Radius Global Solutions, LLC)</u>**

99. Petitioner re-alleges paragraphs 14 through 43 as if fully set forth herein.

100. At all relevant times, Respondents were engaged in trade or commerce within the State of Florida within the meaning of Fla. Stat. § 501.203(8).

101. Respondents **American Express Company, Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. § 501.204, including:

    a. **Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** - Pursuing collection of an alleged debt through multiple coordinated entities simultaneously, none of whom produced chain of title, assignment documentation, or authenticated proof of ownership, creating a false impression that the alleged debt was validly owed and legally collectible;

    b. **Amex** - Furnishing materially inaccurate information to consumer reporting agencies creating a false impression of Petitioner's financial status and obligations, causing Petitioner to be denied credit by BMW Financial Services and US Bank;

    c. **Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** - Providing only billing statements in response to debt

validation requests while simultaneously asserting the right to collect and institute legal proceedings, constituting a deceptive practice in the consumer marketplace;

d. **TSI** - Referencing two different account numbers across collection letters for the same alleged **Amex** obligation, the original account and the unauthorized account created by **American Express** on February 17, 2024 without Petitioner's knowledge or consent, creating a false impression regarding the identity, validity, and standing of the collecting entity to collect either obligation;

e. **Amex** - Canceling Petitioner's credit card on January 20, 2024, then canceling it again on August 28, 2024 when it was already closed, reflecting internally inconsistent representations regarding the status of the account that render the basis for any alleged obligation uncertain and unverifiable;

f. **American Express Company, Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** - Refusing to produce the original signed contract, original signed application, chain of title, authenticated accounting, or proof of consideration while simultaneously asserting the existence of a valid debt obligation and continuing to furnish negative information to consumer reporting agencies;

102. **Amex** - Petitioner affirmatively exercised opt-out rights with Respondents pursuant to the privacy notice requirements of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq., directing Respondents not to share Petitioner's nonpublic personal financial information with third parties. Notwithstanding Petitioner's opt-out election, Respondents shared Petitioner's financial information with multiple successive collection entities. This sharing of Petitioner's financial information in contravention of Petitioner's opt-out election constitutes an unfair and deceptive practice under Fla. Stat. § 501.204, in violation of Petitioner's reasonable expectation of financial privacy.

103. **Amex** – Opening up a new unauthorized in account using the Petitioner's name and other PII, doing a balance transfer, then trying to collect on that new account and the old account simultaneously.

104. As a direct and proximate result of Respondents' unfair and deceptive acts and practices, Petitioner has suffered actual damages including denial of credit applications with BMW Financial Services and US Bank, loss of real property transfer opportunity, reputational harm, and financial hardship in amounts to be determined at trial.

105. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents for violations of Fla. Stat. § 501.204, award Petitioner actual damages, and award reasonable attorney's fees and costs to Petitioner as the prevailing party pursuant to Fla. Stat. § 501.2105.

**COUNT X — COMMON LAW FRAUD (Against Respondents American Express Company; Transworld Systems Inc.; FirstSource Advantage, LLC; Radius Global Solutions, LLC)**

106. Petitioner re-alleges paragraphs 14 through 22 and 39 through 43 as if fully set forth herein.

107. Common law fraud under Florida law requires: a false statement of material fact; knowledge that the statement was false when made or reckless disregard for its truth; intent to induce reliance; justifiable reliance; and resulting damages. Johnson v. Davis, 480 So. 2d 625 (Fla. 1985). Each false statement below is pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).

108. Respondents made the following false statements of material fact:

   a. **Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** - Representations in collection letters asserting the right to collect the alleged debt when Respondents knew or should have known they possessed no chain of title, assignment documentation, or authenticated proof of ownership establishing the right to collect;

   b. **TSI** — Inconsistent Account Numbers: **TSI**'s letters dated June 25, 2024 through December 9, 2024 reference one account number. **TSI**'s letters dated June 5, 2025 and June 23, 2025 reference a materially different account number corresponding to an account created by **American Express** without Petitioner's authorization on or around February 17, 2024. **TSI**

represented in each letter that it had the right to collect a valid identified obligation. At least one set of these representations was false at the time it was made, and **TSI** knew or recklessly disregarded the inconsistency;

c. **American Express** — Creation of Unauthorized Account, February 17, 2024: **American Express** created a new credit account in Petitioner's name without Petitioner's knowledge, authorization, or consent, transferred a balance of $201 from Petitioner's original account to the new unauthorized account, and subsequently increased the balance to $592.42 on a closed account. **American Express** represented to consumer reporting agencies and collection entities that a valid obligation existed under the new account. No valid obligation can arise from an account the consumer never authorized. **American Express** knew Petitioner had not applied for or authorized a new account at the time it represented the obligation as valid and collectible;

d. **American Express** — Refusal to Authenticate While Asserting Valid Debt: By letter dated April 15, 2025, **American Express** acknowledged it could not produce the original signed contract, chain of title, or original signed application, yet continued to assert the existence of a valid debt and to furnish negative information to consumer reporting agencies. The representation that a valid authenticated obligation existed was false; **American Express** knew at the time it made this representation that it could

not produce the foundational documentation establishing the obligation's existence;

e. **American Express Company, Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** — False Representations of Right to Collect: Each collection Respondent represented in its letters that it had the legal right to collect the alleged **Amex** debt. These representations were false. No Respondent produced chain of evidence, assignment documentation, or authenticated proof of ownership establishing the right to collect at the time any collection letter was sent.

109. **American Express Company, Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions,** LLC knew these statements were false at the time they were made, or made them with reckless disregard for their truth or falsity.

110. **American Express Company, Transworld Systems Inc., FirstSource Advantage, LLC, Radius Global Solutions, LLC** intended Petitioner to rely on these false statements by paying the alleged debt, refraining from disputing it, or acquiescing in the collection proceedings.

111. As a direct and proximate result, Petitioner suffered actual damages including denial of credit from BMW Financial Services on four occasions in March 2026 and from US Bank on multiple occasions in February 2025, damage to

creditworthiness, reputational harm, emotional distress, loss of real property transfer opportunity, and financial hardship in amounts to be determined at trial.

112. Respondents' conduct was deliberate, planned, and sentient within the meaning of Cox v. Burke, 706 So. 2d 43, 47 (Fla. 5th DCA 1998) and Tramel v. Bass, 672 So. 2d 78, 85 (Fla. 1st Dist. 1996). Under Adams v. Whitfield, 290 So. 2d 49, 51 (Fla. 1974), punitive damages may be awarded based on legal malice inferred from gross negligence indicating a wanton disregard for the rights of others, a standard satisfied by the documented pattern of false representations made without chain of evidence across multiple entities and multiple years.

113. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondents and award Petitioner actual damages, punitive damages for intentional fraud pursuant to Johnson v. Davis and Adams v. Whitfield, and such further relief as the Court deems just and proper.

**COUNT XI — VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq. (Against Respondent American Express Company)**

114. Petitioner re-alleges paragraphs 14 through 43 as if fully set forth herein.

115. The Truth in Lending Act and its implementing regulation, Regulation Z, 12 C.F.R. § 1026 et seq., require creditors to provide accurate and timely disclosures regarding account balances, finance charges, and billing error resolution procedures.

116. Respondent **American Express** violated 15 U.S.C. § 1666 by failing to properly resolve Petitioner's billing error dispute in accordance with the statutory procedure, including:

   a. Failing to acknowledge the billing error dispute within the required thirty-day period;

   b. Failing to either correct the billing error or provide a written explanation of the creditor's position within two billing cycles;

   c. Continuing to report the disputed amount as delinquent to consumer reporting agencies during the pendency of the unresolved billing error dispute, in violation of 15 U.S.C. § 1666(e).

117. **Amex** violated 15 U.S.C. § 1638 by failing to disclose the basis for balance increases on a closed, charged-off account, leaving Petitioner unable to verify the calculation of the alleged amount owed.

118. **American Express** denied Petitioner's billing error claim by letter dated February 21, 2024, stating that the Petitioner had benefited from the use of the card without providing a detailed explanation required by 15 U.S.C. § 1666(a)(B)(ii), and without providing the documentary evidence supporting its position as required by 15 U.S.C. § 1666(a)(B)(iii).

119. **Amex** - unilaterally reduced Petitioner's credit limits without providing the 45-day advance notice required by Regulation Z, 12 C.F.R. § 1026.9(c)(2)(vi), which mandates written notice of significant changes in account terms before such

changes take effect. No explanation was provided for the reductions. The undisclosed reductions artificially increased Petitioner's reported credit utilization ratio by reducing the denominator against which balances are measured, damaging Petitioner's credit score without disclosure of the basis for the limit reduction or its effect on Petitioner's credit profile.

120. Pursuant to 15 U.S.C. § 1640, Petitioner is entitled to actual damages, statutory damages in an amount equal to twice the finance charge in connection with the transaction, and reasonable attorney's fees and costs.

121. WHEREFORE, Petitioner respectfully requests that this Court enter judgment against Respondent and award Petitioner actual damages, statutory damages pursuant to 15 U.S.C. § 1640, and reasonable attorney's fees and costs.

## VI. HARM SUFFERED

122. Prior to Respondents' conduct, Petitioner operated a thriving entrepreneurial business and maintained a credit profile sufficient to support business operations, real estate investment activity, and personal financial stability. As a direct and proximate result of Respondents' collective conduct, including the wrongful collection actions, inaccurate credit reporting, and the resulting destruction of Petitioner's creditworthiness and business operations, Petitioner has suffered a complete collapse of his business income and financial standing.

123. Petitioner has been forced to rely on government assistance programs to meet basic living expenses, a circumstance directly and proximately caused by Respondents' unlawful conduct and one that would not have occurred but for that

conduct. The loss of business income, the destruction of Petitioner's credit profile, and the resulting inability to access financing, enter into commercial transactions, or pursue the real estate investment and development activities that formed the foundation of Petitioner's livelihood represent the full measure of the economic harm Respondents have caused.

124. As a direct and proximate result of the acts and omissions of all Respondents, Petitioner has suffered the following harms:

a. Unlawful debt collection activity by multiple entities simultaneously pursuing the same unvalidated alleged debt without chain of title;

b. Collection letters referencing a second unidentified account number raising the possibility of collection on a non-existent or misidentified obligation;

c. Inaccurate negative credit reporting including a high balance of $9,433 on a $500/$800 credit limit account, inconsistent account closure dates, balance increases on a closed account, payment grid contradictions, and late payment notations contradicting the payment grid;

d. Failure by consumer reporting agencies to conduct reasonable reinvestigation of disputed information;

e. Unauthorized inquiries through active security freezes in violation of Petitioner's opt-out elections;

f. Denial of access to credit and financing directly resulting from inaccurate reporting;

g. Reputational harm and defamation through publication of false financial information to third parties;

h. Emotional distress, financial hardship, loss of economic opportunity, loss of real property transfer opportunity, and impairment of business operations.

i. Violations of the Florida Consumer Collection Practices Act through harassment, assertion of nonexistent collection rights, and unauthorized communications in connection with unvalidated alleged debts.

j. Denial of credit applications with BMW Financial Services, US Bank, Navy Federal Credit Union, and Alive Credit Unino as a direct and proximate result of inaccurate negative information furnished and maintained by Respondents on Petitioner's consumer credit reports.

k. The creation of an unauthorized **American Express** account in Petitioner's name, the transfer of a balance without authorization, the referral of the unauthorized account to collection agencies, and the continued reporting of the unauthorized account to consumer reporting agencies after receipt of identity theft notices constitutes unauthorized use of Petitioner's personal identifying information causing direct financial harm, damage to creditworthiness, and ongoing collection harassment in connection with an obligation that does not legally exist.

## VII. PRAYER FOR RELIEF

125. WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a. Issue a permanent injunction prohibiting further collection activity by **Transworld Systems Inc., FirstSource Advantage, LLC, and Radius Global Solutions, LLC** against Petitioner on the alleged **Amex** debt;

b. Order **American Express** to provide full debt validation including the original signed contract, complete verified accounting, verified original signed application, and authenticated chain of title, or immediately cease all collection activity and negative credit reporting;

c. Order **TransUnion**, **Equifax**, and **Experian** to immediately delete all negative information furnished by **American Express** and the collection Respondents in connection with the disputed debt, including correction of all inaccurate tradeline data identified in this complaint;

d. Order all Respondents to cease accessing Petitioner's credit reports without explicit written consent and in contravention of active security freezes;

e. Award Petitioner actual damages against all Respondents in an amount to be determined at trial;

f. Award Petitioner statutory damages of $1,000 per Respondent per action under 15 U.S.C. § 1692k(a)(2)(A);

g. Award Petitioner statutory damages of not less than $100 and not more than $1,000 per willful violation per Respondent under 15 U.S.C. § 1681n;

h. Award Petitioner treble damages pursuant to 18 U.S.C. § 1964(c) for RICO violations;

i. Award Petitioner reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(a)(3), and 18 U.S.C. § 1964(c);

j. Refer **Transworld Systems Inc.**, **FirstSource Advantage**, **LLC**, **Radius Global Solutions, LLC**, and **American Express Company** to the Department of Justice for investigation of potential violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1962;

k. Award Petitioner statutory damages pursuant to Fla. Stat. § 559.77(2) for willful violations of the Florida Consumer Collection Practices Act by each collection Respondent;

l. Order **American Express** Company to immediately close the unauthorized account created on or around February 17, 2024, delete all reporting of the unauthorized account from Petitioner's consumer credit files at all three consumer reporting agencies, and provide Petitioner with a written accounting of all activity on the unauthorized account including all charges, fees, interest, and transfers applied from the date of its creation;

m. Refer **American Express** Company to the Federal Trade Commission and the United States Attorney's Office for the Southern District of New York for investigation of potential violations of 18 U.S.C. § 1028 (identity fraud), 18 U.S.C. § 1343 (wire fraud), and 15 U.S.C. § 1681s-2 arising from the creation of an unauthorized consumer credit account and the continued

collection and reporting of obligations arising therefrom after receipt of identity theft notices;

n. Grant any further relief this Court deems just, equitable, and proper.

Respectfully Submitted,

/s/ David Battle
David D. Battle, Jr.
855 Josephine Street
Brooksville, Florida [34601]
Tel: 813-563-7090
Davidbattle1225@gmail.com
Petitioner, Pro Se
Date: October 5, 2026

## CERTIFICATE OF SERVICE

I, David D. Battle, Jr., hereby certify that on October 5, 2026, a true and correct copy of the foregoing filing, was served upon each Respondent at the address listed below via U.S. Marshal, United States Certified Mail, First Class, postage prepaid, return receipt requested, or via the Court's CM/ECF electronic filing system where counsel has appeared.

1. AMERICAN EXPRESS COMPANY
Respondent — Original Creditor / Furnisher
200 Vesey Street
New York, NY 10285
Registered Agent: C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

2. TRANSWORLD SYSTEMS INC.
Respondent — Debt Collector
3838 N. Causeway Blvd, Suite 2800
Metairie, LA 70002
Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

3. FIRSTSOURCE ADVANTAGE, LLC
Respondent — Debt Collector
205 Bryant Woods South
Amherst, NY 14228
Registered Agent: C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

4. RADIUS GLOBAL SOLUTIONS, LLC
Respondent — Debt Collector
3838 N. Causeway Blvd.
c/o Sessions, Israel & Shartle, Suite 2800
Metairie, LA 70002
Registered Agent: C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

5. TRANS UNION LLC
Respondent — Consumer Reporting Agency

P.O. Box 2000
Chester, PA 19016
Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

6. EQUIFAX INFORMATION SERVICES, LLC
Respondent — Consumer Reporting Agency
1550 Peachtree Street NW
Atlanta, GA 30309
Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

7. EXPERIAN INFORMATION SOLUTIONS, INC.
Respondent — Consumer Reporting Agency
475 Anton Blvd.
Costa Mesa, CA 92626
Registered Agent: C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

Respectfully Submitted,

/s/ David Battle
David D. Battle, Jr.
855 Josephine Street
Brooksville, Florida [34601]
Tel: 813-563-7090
Davidbattle1225@gmail.com